[Cite as *In re H.S.*, 2019-Ohio-4334.]

STATE OF OHIO       )             IN THE COURT OF APPEALS
                      )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: H.S.                         C.A. No.     29401
      Z.M.
      I.M.
      P.S.

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN15-09-000611
                 DN15-09-000612
                 DN15-09-000613
                 DN16-11-000955

DECISION AND JOURNAL ENTRY

Dated: October 23, 2019

SCHAFER, Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted permanent custody of the children H.S., Z.M., I.M., and P.S. to appellee Summit County Children Services Board ("CSB" or "the agency"), terminating Father's parental rights to his three biological children, and denying his motion for legal custody of the fourth non-biological child. This Court reverses and remands.

I.

{¶2} Mother and Father live together but have never been married. They are the biological parents of Z.M. (d.o.b. 10/22/13), I.M. (d.o.b. 4/28/15), and P.S. (d.o.b. 11/3/16). Mother is also the biological mother of H.S. (d.o.b. 3/11/10). Except for one short visit with the child, the father of H.S. has not had any contact with her during the child's life. Father has been the only father-figure H.S. has ever known.

{¶3} Based on concerns regarding unsafe and unsanitary conditions and a lack of supervision in the family's home, CSB removed H.S., Z.M., and I.M. in September 2015. Those children were adjudicated dependent and placed in the temporary custody of the agency. As the parents' home continued to present a risk to the safety of the children, CSB removed P.S. immediately upon her birth. That child too was adjudicated dependent and placed in the temporary custody of the agency.

{¶4} CSB moved for permanent custody. The juvenile court denied the motion and granted a six-month extension of temporary custody to allow Mother and Father additional time to follow the recommendations of their recent parenting evaluations. Specifically, the juvenile court ordered CSB to facilitate intensive parenting classes for Mother and Father through Fast Track at which the children would also be present. Approximately five months later, CSB filed its second motion for permanent custody. The juvenile court granted the motion and terminated Mother's and Father's parental rights. Both parents appealed from that judgment.

{¶5} Upon review of Mother's and Father's appellate briefs, this Court directed the parties to brief a supplemental issue regarding "whether the parents received reasonable reunification efforts, as set forth in the case plan and orders of the trial court, pertaining to their cognitive delays and their need for hands-on intensive parenting education." *In re H.S.*, 9th Dist. Summit Nos. 28944 and 28948, 2018-Ohio-3360, ¶ 11. Because CSB did not ensure that Mother and Father had the services of an instructor who could meet with and instruct them during their visitations with the children, this Court concluded that "CSB failed to provide reasonable, court-ordered reunification services in this case." *Id*. at ¶ 24. Accordingly, we reversed and remanded the matter for further proceedings before the juvenile court. *Id.* at ¶ 26.

{¶6} Upon remand, the juvenile court scheduled a status hearing. In the interim, CSB filed a new "original" case plan in which it established a reunification goal for the children and case plan objectives for Mother and Father. The parents' case plan objectives included completing a parenting program, following all recommendations, and demonstrating what they learned during interactions with the children; attending mental health counseling based on their prior diagnoses, obtaining psychiatric evaluations, and following all recommendations; and maintaining a safe, stable, and clean home with working utilities, and demonstrating the financial ability to meet the basic needs of the children. At the status hearing, all parties agreed that additional time was necessary to let the parties address the issues this Court identified in our opinion. The juvenile court scheduled a final dispositional hearing to begin approximately five months later.

{¶7} CSB filed its third motion for permanent custody. Father filed a motion for legal custody of H.S., the child who has no biological connection to him. Although the record does not contain other written dispositional motions, Father's and Mother's individual pretrial statements stated that they also had pending motions for legal custody of all their biological children. The matter proceeded to a hearing on the motions.

{¶8} At the conclusion of the dispositional hearing, the juvenile court denied the parents' respective motions for legal custody, granted CSB's motion for permanent custody, and terminated Mother's and Father's parental rights regarding the children. Father filed a timely appeal in which he raises three assignments of error for consideration. This Court rearranges the assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR CONTINUING THE CHILDREN IN THE TEMPORARY CUSTODY OF CSB AFTER REVERSAL BY THE NINTH DISTRICT COURT OF APPEALS DUE TO IT EXCEEDING TWO YEARS IN THE TEMPORARY CUSTODY OF THE AGENCY AS ALLOWED UNDER R.C. 2151.415(D) HAD EXPIRED. (Sic.)

{¶9} Father argues that the juvenile court lacked jurisdiction to render a final disposition after remand because the children remained in the temporary custody of CSB beyond the time limit allowed by R.C. 2151.415(D)(4). Father argues that the juvenile court, therefore, was required to dismiss the cases. Father's arguments are not well taken.

{¶10} This Court has previously rejected these arguments on multiple occasions. *See, e.g., In re T.H.*, 9th Dist. Summit No. 28833, 2018-Ohio-1143, ¶ 7-9; and *In re K.T.*, 9th Dist. Summit Nos. 28411, 28424, 28427, and 28440, 2017-Ohio-2638, ¶ 13-16.

{¶11} R.C. 2151.415(D)(4) prohibits the juvenile court from "grant[ing] an agency more than two extensions of temporary custody" and "order[ing] an existing temporary custody order to continue beyond two years after * * * the complaint was filed or the child was first placed into shelter care * * *." This Court has construed the plain language of the statute to require an express order by the juvenile court extending or continuing temporary custody before error exists. *In re K.T.* at ¶ 16. In this case, after this Court reversed the judgments awarding permanent custody and remanded the matters for further proceedings, the juvenile court did not issue any orders granting an extension or continuance of temporary custody. Instead, the trial court merely conducted further proceedings to resolve the remaining issue in the cases, specifically the custodial dispositions of the children.

{¶12} Although the children remained in the temporary custody of CSB beyond two years, we further recognize and rely on the Ohio Supreme Court's holding that "'[t]he passing of the statutory time period ("sunset date") pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders.'" *In re T.H.* at ¶ 9, quoting *In re Young Children*, 76 Ohio St.3d 632 (1996), syllabus. Even where a temporary custody order may have expired, the juvenile court retains jurisdiction to resolve the issue of the children's custodial dispositions. *In re T.H.* at ¶ 9, citing *In re Young Children* at 639.

{¶13} This Court reversed the juvenile court's award of permanent custody. We did not grant the parents' motions for legal custody. Accordingly, the children's custodial dispositions remained unresolved and the juvenile court retained jurisdiction to enter dispositional orders beyond the sunset date of the cases. Father's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED THE PARENTS' RIGHTS AND PLACED THE CHILDREN IN THE PERMANENT CUSTODY OF CSB WHEN THE AGENCY DID NOT COMPLY WITH COURT ORDERS AND PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶14} Father argues that the juvenile court lacked the authority to terminate parental rights because CSB failed to use reasonable reunification efforts after this Court's reversal and remand regarding the prior permanent custody judgment. Father's argument has merit.

{¶15} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent

three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). In this case, the juvenile court found as the sole first-prong ground for permanent custody that the children had been in the temporary custody of CSB for at least 12 of the prior 22 months.

{¶16} We reiterate from the prior appeal:

> [T]he authority of the juvenile court and the county children services agency in abuse, dependency, and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151. *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 35, citing *In re I.S.*, 9th Dist. Summit No. 24763, 2009-Ohio-6432, ¶ 10. Because termination of parental rights has been described as the family law equivalent of the death penalty[,] the parents must be afforded every procedural and substantive protection the law allows. *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Among those procedural protections is the obligation of the agency to make reasonable efforts to reunify the child[ren] with one or both parents. *In re S.R.* at ¶ 37, citing R.C. 2151.419.

(Alterations sic.) (Internal quotations omitted.) *In re H.S.*, 2018-Ohio-3360, at ¶ 14.

{¶17} R.C. 2151.413(D)(3)(b) expressly prohibits the agency from moving for permanent custody on the basis that a child has been in the agency's temporary custody for 12 of 22 months if, when required to do so, the agency "has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." Accordingly, inherent in an agency's "12 of 22" allegation is that it has engaged in reasonable efforts towards reunification. Unless the agency has been relieved of its statutory obligation to use reasonable efforts to facilitate reunification, it must demonstrate such efforts at the permanent custody hearing, if it has not established that it made reasonable efforts prior to the hearing on the motion. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43.

{¶18} In this case, there was no judicial determination relieving CSB of its statutory obligation to make reasonable efforts to reunify the children with their parents. Accordingly, the agency was required to demonstrate that it had developed and facilitated a plan to "'account for the respective abilities of the parents and children in pursuing individualized concerns, goals, and steps necessary for reunification.'" *In re H.S.* at ¶ 18, quoting *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 10.

{¶19} In reversing the juvenile court's prior award of permanent custody, this Court concluded that reasonable reunification efforts needed to focus on the parents' limitations stemming from their cognitive delays, specifically a "hands-on parenting education program that enables the parents to role-model appropriate parenting behavior." *In re H.S.* at ¶ 19. Although CSB had referred the parents to a hands-on parenting education program which incorporated the children as ordered by the juvenile court, the instructor's schedule did not permit her to meet with the parents at a time when the children were present. *Id.* at ¶ 23. Because "CSB made no effort to resolve the scheduling conflict by adjusting the parents' visitation schedule or requesting a different instructor[,]" this Court concluded that the agency "failed to provide reasonable, court-ordered reunification services[.]" *Id.* at ¶ 24.

{¶20} After remand, CSB again referred the parents to an appropriate hands-on parenting program which included an academic component and the opportunity to apply lessons to interactions with the children in the presence of the instructor. The program through Ohio Guidestone was individualized to accommodate the parents' cognitive limitations. The instructor began working with Mother and Father during in-home visits with the children. After only two sessions, however, CSB terminated the parents' in-home visits and moved all future visitation to the Family Interaction Center based on agency policy, because CSB had filed another motion for

permanent custody. The Ohio Guidestone instructor was willing to continue working with the parents and children together, but her schedule precluded her from attending visits at the time scheduled by CSB. Although the Ohio Guidestone instructor continued to work with the parents in their home, Mother and Father had no further opportunity to apply those lessons with the children under the supervision and reinforcement of the instructor as required to accommodate the parents' special needs. Precisely as this Court concluded in the previous appeal, the evidence again demonstrates that "CSB made no effort to resolve the scheduling conflict by adjusting the parents' visitation schedule or requesting a different instructor from [the service provider]." *In re H.S.* at ¶ 24.

**{¶21}** The CSB caseworker testified that, when in-home visits began, both parents showed improvement since working with the Ohio Guidestone instructor as evidenced by their abilities to better predict issues and solve problems. Moreover, the caseworker testified that she believed that the parents' progress would have continued with more in-home visits and training. She regretted that in-home visits had to cease based merely on agency policy because Mother and Father had done nothing wrong during in-home visits to otherwise require their termination.

**{¶22}** CSB filed its most recent motion for permanent custody, thereby requiring the cessation of in-home visits, exactly six months after this Court reversed the prior permanent custody judgment in the belief that they were limited by law to that period of time to reengage in reunification efforts. When discussing the parents' demonstrated ability to safely parent the children, the caseworker testified:

> I think we were well on our way. I wish we would have had more time. I wish that this [Ohio Guidestone] service would have been offered to the family in an appropriate, timely fashion, but I can't change that.

The caseworker recognized that she could not attempt reunification if she could not observe the parents "in real life" as opposed to the artificial environment of the visitation center. Nevertheless, although she had linked the parents with the appropriate resources and the evidence indicated that the parents needed more time to continue their progress, the caseworker testified, "But my time is up. * * * I have no more time" pursuant to "statutory" law.

{¶23} This Court finds no authority for the legal proposition that, upon reversal and remand after children have been the subjects of a dependency action for more than two years, the juvenile court retains jurisdiction only for an additional six-month period. Although the juvenile court is precluded from ordering an extension of temporary custody beyond two years after the complaint was filed pursuant to R.C. 2151.415(D)(4), the trial court retains continuing jurisdiction upon remand by operation of law. Upon remand, CSB's self-imposed artificial six-month deadline defeated the purpose of any reunification efforts. By prematurely filing its motion for permanent custody, knowing that in-home visits must then stop, the agency created an artificial barrier to reunification that it could not overcome. Hands-on parenting education incorporating the children, which was deemed necessary by the juvenile court to accommodate the needs of the parents with cognitive delays, has still not occurred. Reluctantly, despite the length of time that these children have lacked permanency, this Court again concludes that CSB's failure to make reasonable efforts to attempt to reunify the children with the parents requires reversal of the permanent custody judgment and remand to the juvenile court for further proceedings.

{¶24} Based on the evidence presented at the permanent custody hearing, this is not a hopeless case where the parents have demonstrated no ability to assimilate the knowledge and skills necessary to safely parent the children. Both the CSB caseworker and Ohio Guidestone

instructor testified that the parents were making progress and demonstrating an improved ability to identify potential issues and engage in problem-solving. The opportunity for the juvenile court to determine whether or not the parents can ultimately progress to the point of being able to provide a safe and stable home environment for the children has not yet been presented based on the lack of reasonable reunification efforts by CSB. Father's first assignment of error is sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT GRANTED PERMANENT CUSTODY WITHOUT RETURNING THE CHILDREN TO FATHER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} Father argues that the juvenile court's award of permanent custody of the children to CSB was against the manifest weight of the evidence. Based on this Court's resolution of Father's first assignment of error, his third assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶26} Father's second assignment of error is overruled, his first assignment of error is sustained, and this Court declines to address the third assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee Summit County Children Services Board.

_____
JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.

DANIEL BACHE, Attorney at Law, for Mother.

JOSEPH KERNAN, Guardian ad Litem.